IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR TENNESSEE COMMERCE BANK, )<br>)<br>)<br>) | |
| ) | No. 3:12-cv-00218 |
| Plaintiff, )<br>) | |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Brown |
| ANTHONY W. THORTON, et al., )<br>) | |
| Defendants. ) | |

## ORDER

Pending before the Court is Plaintiff Federal Deposit Insurance Corporation, as Receiver for Tennessee Commerce Bank's Motion for Attorneys' Fees and Costs ("Motion"). (Doc. No. 108.) Defendants Anthony W. Thornton, Elizabeth Thornton, and Bowling Green Freight, Inc. ("Defendants") filed a Response in Opposition to Plaintiff's Motion. (Doc. No. 111.) For the reasons below, Plaintiff's Motion is **GRANTED** in part and **DENIED** in part.

I. BACKGROUND

*A. Factual Background*

The Court adopts the Findings of Fact section of its order granting judgment in favor of Plaintiff in this matter (Doc. No. 104 at 1–3), unless otherwise noted.

*B. Procedural Background*

On January 27, 2012, Plaintiff filed this action in the Davidson County Chancery Court, alleging breach of contract and breach of guaranty agreements based on several loan agreements entered into between Tennessee Commerce Bank and Bowling Green Freight, which were

1

guaranteed by the Thorntons. (Doc. No. 1-1.) On February 27, 2012, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1332. (Doc. No. 1.)

The Court held a bench trial on August 6, 2013. (Doc. No. 85.) On December 9, 2013, the Court entered judgment in favor of Plaintiff in the amount of $134,722.50 and held that "[t]he prevailing party may move for attorney's fees and costs." (Doc. No. 104 at 11.) On December 23, 2013, Plaintiff filed its Motion, along with a Memorandum in Support and a Declaration of John M. Hull. (Doc. Nos. 108–110.) Defendants filed a Response in Opposition to Plaintiff's Motion on December 30, 2013. (Doc. No. 111.)

## II. LEGAL STANDARD

Attorney's fees awarded by federal courts are generally the result of a party prevailing under federal fee-shifting statutes. *See, e.g.*, 42 U.S.C. § 1988(b) (2012). In such cases, federal courts have developed federal common law for the determination of these statutory attorney's fees. *See Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 620–21 (6th Cir. 1998) (applying federal common law to determine attorney's fees under ERISA). However, where a district court sits in diversity jurisdiction, "attorneys' fees are governed by state law." *Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011). Generally, these state-law governed attorney's fee awards are derived from contractual fee-shifting provisions, which are thereby governed by state contract law. *See id.*

The Sixth Circuit has explained, however, that "the reasonableness of an award of attorneys' fees can be analyzed under federal common law," even where the attorney's fees are provided for by a contract governed by state law, "because attorney fee awards traditionally have not been under the exclusive domain of the states." *Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323, 328 n.6 (6th Cir. 2008) (quoting *Ford*, 154 F.3d at 620). The Sixth Circuit

subsequently cautioned that the reasoning of *Graceland* is only applicable where "the attorney fee issue [is] ancillary to the main litigation." *Alticor, Inc. Nat'l Union Fire Ins. Co. of Penn.*, 345 F. App'x 995, 1000 (6th Cir. 2009).

The Court finds the request for attorney's fees in this case to be ancillary to the main litigation, given that the main focus of this case was to determine whether Defendants were liable for breach of contract and breach of guaranty agreements, as evidenced by the Court's order entering judgment in favor of Plaintiff. (*See* Doc. No. 104.) Moreover, the only contested issue in this case regarding attorney's fees is the calculation of the award. Thus, the Court applies the Sixth Circuit's standards for determining the appropriate attorney's fee award in this case. *See Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, Nos. 5:09-cv-317-KKC, 5:10-cv-72-KKC, 2013 WL 1332499, at *1 (E.D. Ky. Mar. 29, 2013), *aff'd*, 751 F.3d 434 (6th Cir. 2014).

### III. ANALYSIS

In this case, Plaintiff requests a fee award of $50,208.78. (Doc. No. 108 at 2.) Specifically, Plaintiff requests attorney's fees in the amount of $44,368.15, costs in the amount of $840.63, and "fees and expenses for Plaintiff's post-judgment collection efforts" in the amount of $5,000.00. (*Id.* at 2.) Plaintiff attached a detailed account of the time its attorneys spent on this case and associated costs to the Declaration of John M. Hull, which was filed with Plaintiff's Motion. (Doc. Nos. 110; 110-1.) Additionally, the Declaration states that "[b]ased upon Plaintiff's counsel [sic] experience with post-judgment collection activities, it appears that the amount of $5,000.00 would be reasonable and necessary in order to pursue the collection of this matter." (Doc. No. 110-1 ¶ 3.) Plaintiff's counsel expects their "post-judgment collection activities" to include: (1) "domesticat[ing] this action in Kentucky where the principal office of Bowling Green Freight, Inc. is located, and where Anthony Thornton and Elizabeth Thornton are

working and where they reside"; (2) "serv[ing] written post-judgment discovery upon the Defendants"; and (3) "if necessary, tak[ing] the Defendants' depositions in Kentucky." (*Id.*)

Defendants do not appear to refute Plaintiff's assertion that it is entitled to attorney's fees, costs, and post-judgment collection costs under the contract at issue,[1] nor do they object to the amount of attorney's fees and costs requested. (*See* Doc. No. 111.) However, Defendants contest the amount requested for post-judgment collection efforts and contend that "the $5,000 figure is premised upon purely hypothetical calculations." (*Id.* ¶ 2.) Defendants argue that Tennessee's "inherent requirement that any projected fees be reasonable bars the award of the entirely speculative amount that [Plaintiff] seeks for future collection expenses." (*Id.* ¶ 3 (citing *First Peoples Bank of Tenn. v. Hill*, 340 S.W.3d 398, 410 (Tenn. Ct. App. 2010).)

As noted above, the Court applies federal common law to determine an appropriate attorney's fee award, given that Plaintiff's request for attorney's fees is ancillary to the main litigation. *See Alticor*, 345 F. App'x at 1000. The Sixth Circuit and district courts within it have consistently applied a "reasonable attorney's fees" standard, even where presented with disputes regarding fees provided for by contract. *See, e.g., Graceland Fruit*, 320 F. App'x at 328–29; *Crestwood Farm*, 2013 WL 1332499, at *1–4. The Court is unaware of a federal common law standard for determining an appropriate fee award for anticipated collection efforts or future costs and expenses, nor do the parties provide any federal or state precedent articulating such a standard. Accordingly, the Court applies the same "reasonable attorney's fees" standard that it applies to already-incurred fees.[2]

---

[1] The Business Loan Agreement and Commercial Guaranty Agreements specifically provide for "legal expenses for . . . anticipated post-judgment collection services." (Doc. Nos. 74-2 at 4; 74-3 at 2.) The Promissory Note at issue does not explicitly provide for post-judgment collection efforts, but states "Borrower also will pay any court costs, in addition to all other sums provided by law." (Doc. No. 74-1 at 1.)

[2] The Court also notes that, even were it to apply Tennessee law governing attorney's fees, the fees must still be "reasonable," even when provided for by contract. *See, e.g., First Peoples Bank of Tenn.*, 340 S.W.3d at 410

The starting point for a determination of reasonable attorney's fees "is the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In addition, the Supreme Court has endorsed the following twelve-factors as useful in determining the reasonableness of a requested fee award:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5 (1989). Although district courts have discretion in determining the proper award, in most cases, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. The party requesting attorney's fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates," and counsel should "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434, 437. With regard to evidence of hours reasonably expended on the litigation, the requesting party "is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Id.* at 437 n.12.

---

(explaining that, where attorney's fees are awarded pursuant to a contractual provision, "the amount of the fee must be reasonable, even if the contract does not so require").

While the Court agrees that Plaintiff is entitled to costs for "anticipated post-judgment collection" efforts pursuant to the contracts at issue, the Court finds Plaintiff has failed to satisfy its burden of proof in demonstrating the reasonableness of the requested $5,000.00 in post-judgment collection fees. Based upon Plaintiff's attorney's hourly rate of $191.00 (*see* Doc. No. 110-1), Plaintiff appears to anticipate post-judgment collection hours to equal over twenty-six billable hours. Other than expecting to "domesticate this action in Kentucky," "serve written post-judgment discovery upon the Defendants," and "if necessary, take the Defendants' depositions in Kentucky," Plaintiff's counsel does not explain its anticipated collection efforts. (Doc. No. 110 ¶ 3.) The Court notes that other federal district courts have denied requests for anticipated post-judgment collection efforts for similar reasons. For example, in *Farm Credit of Northwest Florida, ACA v. R & B Construction of South Alabama, Inc.*, No. 08-0439-WS-C, 2009 WL 4456340, at *5–6 (S.D. Ala. Nov. 24, 2009), the court denied a request for future attorney's fees associated with collecting a money judgment where the requesting party failed to submit any legal authority authorizing prospective attorney's fee recovery and "offer[ed] nothing other than speculation that collection efforts on this default judgment will prove expensive and time-consuming." *See also Akula v. Airbee Wireless, Inc.*, No. 1:08cv421 (JCC), 2009 WL 122795, at *2 (E.D. Va. Jan. 14, 2009) (finding that the plaintiff's request for "attorney's fees that it reasonably anticipates incurring to collect on [the] judgment . . . [is] too speculative at this point in the collection process.").

Here, similar to the requesting party in *Farm Credit*, Plaintiff's counsel "does not link his opinions to any evidence concerning the financial status or anticipated resistance to collection efforts" of Defendants. *Farm Credit*, 2009 WL 4456340, at *5 n.7. The parties appear to have a good working relationship, and Defendants have not shown any evasiveness in responding to

court-ordered deadlines or appearing at hearings. As such, the Court concludes that the $5,000.00 request for post-judgment collection costs is speculative and therefore unreasonable.

Regarding the amount of attorney's fees and costs requested by Plaintiff, the Court finds that the amounts requested ($44,368.15 and $840.63, respectively) are reasonable. Plaintiff has been represented in this case by attorneys from Sherrard & Roe; Sims Funk, PLC; Leitner, Williams, Dooley & Napolitan, PLLC; and Chaffin & Burnsed, PLLC. Plaintiff requests rates of $148–$191 per hour for its attorneys[3] and $83 per hour for what appears to be paralegal time.[4] (Doc. No. 110-1.) The vast majority of the hours recorded in Plaintiff's counsel's Statement of Account, attached to the Declaration of John M. Hull, are hours billed by attorney John M. Hull, a "Member"[5] at Leitner, Williams, Dooley & Napolitan, PLLC ("LWDN") at a rate of $191.00. (Doc. Nos. 110 ¶ 1; 110-1.) Mr. Hull received his Juris Doctorate at University of Tennessee College of Law, *Leitner, Williams, Dooley & Napolitan, PLLC*, http://www.leitnerfirm.com (last visited August 11, 2014), and has been licensed and in good standing to practice law in Tennessee since 1991, *Board of Professional Responsibility of the Supreme Court of Tennessee*, http://www.tbpr.org/consumers/attorneysearch/AttorneyDetails.aspx?id=7504acf9-fa60-de11-8b1d-00221913b451 (last visited August 11, 2014). LWDN is a small- to medium-sized firm, housing approximately seventy attorneys in five offices in Tennessee and Georgia. *See* Leitner, Williams, Dooley & Napolitan, PLLC, http://www.leitnerfirm.com (last visited August 11, 2014).

---

[3] Plaintiff's counsel appears to discount attorney travel time to $96 per hour. (*See* Doc. No. 110-1 at 5.)
[4] Although Plaintiff's accounting records do not state whether the person billing $83 per hour, "MH," is an attorney or paralegal, based on the tasks performed and the rate compared to the rate billed by "JMH," who the Court presumes to be attorney John M. Hull, the Court presumes the hours billed by MH are for paralegal work.
[5] Based on LWDN's website, it appears to the Court that "members" at LWDN are the equivalent of partners at other law firms.

"A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the '*prevailing market rate in the relevant community.*'" *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (emphasis added)). The Court finds that $148–$191 per hour is a reasonable rate, given that (1) Defendants do not contest the rate requested (*see* Doc. No. 111); (2) Plaintiff's attorney John M. Hull states in his Declaration that he is "familiar with the fees typically charged by attorneys for legal services in Middle Tennessee" and "[t]he fees listed . . . are in line with fees typically charged by attorneys in Middle Tennessee with comparable education, experience and ability, and are reasonable" (Doc. No. 110 ¶ 4); and (3) this Court has recently upheld much higher rates for attorneys in similar and more complex cases, suggesting $191.00 per hour for a breach of contract claim is reasonable, *see, e.g.*, *Villegas v. Metro. Gov't of Davidson Cnty./Nashville-Davidson Cnty. Sheriff's Office*, No. 3:09-0219, 2012 WL 4329235, at *2, 6–7 (M.D. Tenn. Sept. 20, 2012) (finding an average rate of $320.00 per hour reasonable where the underlying case involved constitutional claims under 42 U.S.C. § 1983, the litigation lasted for three years, and plaintiff's attorneys from a small Nashville firm of thirty attorneys made "multiple attempts" to settle the action, "filed a successful motion for partial summary judgment[,] and obtained a favorable jury verdict"); *Guesthouse Int'l Franchise Sys., Inc. v. British Am. Props. MacArthur Inn, LLC*, No. 3:07-0814, 2009 WL 792570, at *7–10 (M.D. Tenn. Mar. 23, 2009) (finding an average rate of $271.00 per hour reasonable for work performed on a breach of contract case where the contract provided for the plaintiff's attorney's fees, "[a] substantial amount of [the] work . . . was performed by [a senior attorney]," and a good portion of the fees were incurred preparing dispositive motions).

Plaintiff requests fees for 238.40 hours of work, which includes 6.00 hours of presumed paralegal work. (*See* Doc. No. 110-1 at 3.) While the prevailing party "bears the burden of . . . documenting the appropriate hours expended," *Hensley*, 461 U.S. at 437, "a reduction in attorney fees is to be applied only in rare and exceptional cases where specific evidence in the record requires it," *Isabel*, 404 F.3d at 416. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

Because the hours recorded in Plaintiff's counsel's Statement of Account (Doc. No. 110-1) appear to all reflect legal work reasonably expended by Plaintiff's attorneys, the Court finds the requested 238.40 hours to be reasonable. Further, given Plaintiff's success in this litigation in obtaining a judgment following a bench trial in the amount of $134,722.50, the Court finds no reason to reduce the amount of the attorney's fee award. Lastly, the Court finds Plaintiff's requested costs—for counsel's travel and lodging during trial, transcript request fees, and production costs for trial exhibits (*see* Doc. No. 110-1 at 6)—to be reasonable.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion as follows: Plaintiff shall be entitled to $44,368.15 for attorney's fees in the underlying litigation, $840.63 in costs, for a total award of **$45,208.78**. Plaintiff's request for $5,000.00 for costs for future post-judgment collection efforts is **DENIED**.

It is so ORDERED.

Entered this the ___ day of August, 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT