IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE ) <br> CORPORATION, as Receiver for ) <br> Tennessee Commerce Bank ) <br> ) <br> v. ) <br> ) <br> ANTHONY W. THORNTON, ) <br> ELIZABETH THORNTON, and ) <br> BOWLING GREEN FREIGHT, INC. ) | Case No. 3:12-cv-00218 |

**To:** Honorable Aleta A. Trauger, United States District Judge

**REPORT AND RECOMMENDATION**

Pending before the Court are various motions: a motion by Federal Deposit Insurance Corporation, as Receiver for Tennessee Commerce Bank, to quash Defendant Bowling Green Freight, Inc.'s writ of execution (Docket No. 146); a motion by Federal Deposit Insurance Corporation, in its corporate capacity to quash Defendant Bowling Green Freight, Inc.'s writ of execution (Docket No. 155); and, a motion to subject by Defendant Bowling Green Freight, Inc. ("BGF") requesting payment of the judgment as a first priority administrative receivership expense (Docket No. 157). Responsive filings have been made and the motions are ready for disposition. These matters were referred to the undersigned for disposition. *See* Order at Docket No. 160.

Because these are post-judgment motions, the magistrate judge's jurisdiction is limited to a report and recommendation. 28 U.S.C. § 636(b)(1)(b); *see also Massey v. City of Ferndale,* 7 F.3d 506, 510 (6th Cir.1993). For the reasons discussed below, the undersigned respectfully recommends that the motions to quash (Docket Nos. 146 and 155) be granted, except as to FDIC-R's request for attorneys' fees as sanctions under Rule 11 of the Federal Rules of Civil Procedure,

which the undersigned recommends be denied without prejudice.[1] The undersigned further respectfully recommends that the motion to subject (Docket No. 157) be denied.

## I. Background[2]

This litigation was commenced by the filing of a lawsuit by Tennessee Commerce Bank on January 27, 2012 in the Chancery Court for Davidson County, Tennessee for collection of amounts ostensibly owed by Defendants Bowling Green Freight, Inc., Andrew Thornton, and Elizabeth Thornton. (Docket No. 1-1.) Defendants removed the lawsuit to this Court on February 27, 2012. (Docket No. 1.) There is no dispute that after the lawsuit was filed, Tennessee Commerce Bank was placed into receivership and the Federal Deposit Insurance Corporation ("FDIC-R") was appointed as receiver under the provisions of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"). FDIC-R was substituted as the party in interest for failed Tennessee Commerce Bank ("TCB"). (Docket No. 11.) Litigation continued, including to a bench trial and judgment against Defendants that was appealed to the Sixth Circuit (*see* Dockets Nos. 104, 105, and 106), which vacated this Court's original judgment against Defendants. (Docket No. 122.) Following remand, the Court redirected application of a loan payment made by Defendants (*see* Order at Docket No. 127) and ultimately awarded attorneys' fees to Defendants

---

[1] Unless otherwise noted, all references to rules are to the Federal Rules of Civil Procedure.

[2] Familiarity with this case is presumed and the background is only recited in detail here as needed to explain or give context to this report and recommendation. These background facts are submitted as proposed findings of fact pursuant to 28 U.S.C. § 636(b)(1)(B). Unless otherwise stated, the background facts are undisputed. The facts of the underlying lawsuit are stated in the Sixth Circuit's opinion in *F.D.I.C. v. Thornton*, 595 Fed. App'x. 513 (6th Cir. 2014) and are adopted by reference as if fully set out herein.

as "prevailing parties" pursuant to the Forbearance Agreement between Defendants and TCB, with an offset for the remaining loan balance. (Docket No. 132.)

For purposes of the instant dispute, the relevant facts begin with the Court's order of September 5, 2017, which set the amount of the previously awarded attorneys' fees at $92,049.37 plus pre-judgment interest at a rate of 9%, with certain deductions and instructions to the parties to make the final calculations of the net amount to be stated in an agreed order of dismissal. (Docket No. 138.) As instructed, the parties submitted a Final Judgment and Agreed Order of Dismissal, which was entered by the Court on October 5, 2017. (Docket Nos. 140 and 141.) The final agreed judgment confirmed the parties' calculations required by the September 5, 2017 Order and their agreement to entry of judgment in the amount of $88,182.02 against "the plaintiff, Federal Deposit Insurance Corporation." (Docket No. 140 at 1.)[3]

On February 21, 2018, FDIC-R sent BGF a Notice of Allowance of Claim ("NAC"), previously known as a receiver's certificate. The NAC stated that FDIC-R had allowed BGF's general unsecured claim in the amount of the agreed judgment, $88,182.02. (Docket No. 146-1.) The NAC further stated that BGF could receive periodic payments or dividends as FDIC-R liquidated assets of the receivership and that dividends would be paid "in accordance with the priorities established by applicable law," referencing 12 U.S.C. § 1821(d)(11)(A). (*Id.*)

On March 8, 2021, BGF initiated proceedings to collect the judgment by a writ of execution to Bank of America, N.A. (Docket No. 143.) BGF's application for a writ of execution (and therefore the writ ultimately issued) demanded collection from property of Federal Deposit

---

[3] The significance of this description is discussed in more detail below.

Insurance Corporation, specifically "quarterly assessments owed to the FDIC." (Docket Nos. 143 at 4 and 145.)

On April 19, 2021, FDIC-R, in its capacity as receiver for TCB, moved to quash the writ of execution on several grounds. (Docket No. 146.) Specifically, FDIC-R asserts that BGF's claim was properly satisfied in full by the issuance of the NAC for the amount of the claim and, additionally, that BGF is expressly precluded by the statutory provisions of FIRREA from seeking attachment or execution of receivership assets. (Docket No. 147.) FDIC-R also maintains that FDIC-R holds no assets at Bank of America, that FDIC-R is a separate legal entity from Federal Deposit Insurance Corporation (referred to as "FDIC-C"), and that FDIC-C is not and never has been a party to this lawsuit and is not liable for the judgment. (*Id*.) FDIC-R also requests its attorneys' fees under Rule 11. (*Id*. and Docket No. 168.)

Also on April 19, 2021, Bank of America, N.A., which was served with the writ of execution, filed a motion to stay enforcement and any response by Bank of America pending the ruling on FDIC-R's motion to quash. (Docket No. 148.) Bank of America's motion to stay enforcement and for an extension of time to respond was granted by order of the Court entered on April 20, 2021. (Docket No. 150.)

On April 23, 2020, FDIC-C filed a motion to quash the writ of execution. (Docket No. 155.) Mirroring the arguments made by FDIC-R, the motion to quash by FDIC-C is based on the claimed legal distinction between the two entities and a lack of responsibility by FDIC-C for any obligations of FDIC-R. (Docket No. 156.) FDIC-C also asserts that the Bank of America assessments are paid to FDIC-C – not to FDIC-R – for Bank of America's contribution to the "federal deposit insurance fund, a pool of assets used to guarantee the safety of federally insured deposits." (*Id*. at 5-6.)

In response to the motions to quash, BGR filed a motion to subject, pursuant to Rule 69 and Tenn. Code Ann. § 26-4-102, essentially requesting that "the plaintiff and judgment debtor, Federal Deposit Insurance Corporation" be directed to pay the final judgment as an administrative expense of the receivership from funds on hand in the receivership estate. (Docket Nos. 157, 158, and 159.) BGR opposes the request for attorneys' fees as a sanction under Rule 11, arguing that FDIC-R did not comply with the express requirements of Rule 11 and that there are sound bases for the relief requested by BGR.

## II. Legal Standards and Analysis

Many of the arguments made in the various pending motions overlap and the Court therefore addresses the arguments for all purposes.

### A. The express statutory provisions of FIRREA preemptively bar execution upon receivership assets.

Under the provisions of FIRREA, "[n]o attachment or execution may issue by any court upon assets in the possession of the receiver." 12 U.S.C. § 1821(d)(13)(C). This plain language deprives courts of jurisdiction to issue remedies in aid of post-receivership collection. BGF suggests in support of its motion to subject that the provisions of Tenn. Code Ann. § 26-4-102 afford relief in this FIRREA case. (Docket No. 158 at 4 and 11.)[4] BGF does not, however, provide

---

[4] That statute provides that

[t]he court has power to compel the discovery, and to prevent the transfer, payment, or delivery of the property, and to subject the same to the satisfaction of the judgment or decree, whether such property could, if in the defendant's possession or with the title vested in the defendant, be levied upon by execution or not.

Tenn. Code Ann. § 26-4-102.

5

any authority that Tenn. Code Ann. § 26-4-102 applies in this case. "In the context of the FDIC, courts have consistently applied federal law to this federal entity when it operates in its corporate capacity or liquidates a national bank." *Gaff v. F.D.I.C.*, 919 F.2d 384, 388 (6th Cir. 1990) (collection of cases); *see also F.D.I.C. v. Bates*, 42 F.3d 369, 370 n.1 (6th Cir. 1994) (recognizing *Gaff* as holding that "federal law totally preempts state law under FIRREA").[5]

Based on the express provisions of FIRREA, made applicable by Rule 69(a)(1), this Court lacks jurisdiction to issue a writ or attachment in aid of execution or collection of BGF's judgment. This bar extends to other collection remedies as well. *Resolution Trust Corp. v. Cheshire Mgmt.Co.*, 18 F.3d 330, 334 (6th Cir. 1994). Arguably, the broad scope of the prohibition is preemptively fatal to the granting of relief to BGF, regardless of whether BGF seeks to garnish a bank account or to subject assets held by FDIC-R to satisfaction of the judgment under Tenn. Code Ann. § 26-4-102. The immediate payment requested by BGF would "interfere[] with the receiver's ability to dispose of assets in much the same manner as an attachment or execution. To allow a creditor to do so would frustrate Congress's purpose in enacting § 1821(d)(13)(C), which is to prelude post-receivership improvement of position." *Id*. For these reasons alone, BGF's motion to subject fails. However, because BGF has asserted grounds for relief that are not directly encompassed within the statutory language of § 1821(d)(13)(C), the Court will address BGF's other theories.

## B. BGF has failed to state any cognizable legal basis for relief.

Essentially, BGF argues that it is entitled to immediate payment of its claim from the $6 million in cash in the TCB receivership account. (Docket No. 158.) BGF has effectively

---

[5] Rule 69 provides generally that state law remedies in "aid of judgment or execution" apply, except that "a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1).

6

abandoned its request for a writ of execution on funds in the possession of Bank of America, perhaps realizing the legal folly of that endeavor. Nevertheless, given the convoluted and overlapping presentation of the parties' positions, the Court will address all the remaining issues raised, both initially and in BGF's present motion, to avoid any misapprehension about the foundation for the conclusion that none of BGF's claimed bases for relief pass legal muster.

### 1. FDIC-C is a separate legal entity from FDIC-R and has no legal obligation to satisfy the judgment in favor of BGF.

Before discussing the legal distinction between FDIC-R and FDIC-C, the Court dispenses with BGF's contention that FDIC-C's motion to quash should be denied because FDIC-C is not a party to this case and did not seek leave to intervene. When a deprivation of property is at stake, the property owner has a Fifth Amendment right to notice and an opportunity to be heard. *Fuentes v. Slavin*, 407 U.S. 67, 82 (1972). That FDIC-C is not a party to this case does not change that fundamental right and, under the circumstances presented here, the Court finds no obstacle to resolution of FDIC-C's motion to quash in the lack of formal intervention by FDIC-C. Put another way, in the absence of any authority that a non-party must move to intervene before filing a motion objecting to the claimed wrongful seizure of its property – authority that BGF did not provide – the Court relies on constitutional principles to find that FDIC-C may object to garnishment of its property by moving to quash the writ of execution. Further, the posture of this dispute is one of BGF's own making in not giving FDIC advance notice of the application for writ of execution, even as a matter of courtesy, since BGF's counsel had already been in contact with FDIC attorneys. BGF's protest that FDIC-C has disregarded procedural rules has no purchase.

It is settled law that FDIC-R and FDIC-C are distinct legal entities, without any liability for the conduct or obligations of the other. *See e.g. Comm. Law Corp. P.C. v. F.D.I.C.*, No. 10-13275, 2016 WL 4035508, at *5 (E.D. Mich. July 28, 2016) *aff'd* 716 Fed. App'x 383 (6th Cir.

7

2017) ("The division of labor between FDIC in its two capacities is so distinct that they are considered separate legal entities and 'Corporate FDIC is not liable for wrongdoings by Receiver FDIC' or vice-versa.") (quoting *F.D.I.C. v. Roldan Fonseca*, 795 F.2d 1102, 1109 (1st Cir. 1986)). *See also F&T Contractors, Inc. v. Cuvrell (In re F&T Contractors, Inc.)*, 718 F.2d 171, 176-77 (6th Cir. 1983) (expressly recognizing dual capacities of the FDIC, including for jurisdictional purposes); *F.D.I.C. v. Dempster*, 637 F.Supp.362, 365 (E.D. Tenn. 1986) ("That the FDIC/Receiver and the FDIC/Corporation acting in these capacities are two separate entities is a well accepted matter of law.") (collection of cases); *F.D.I.C. v. Butcher*, 660 F.Supp. 1274, 1280 (E.D. Tenn. 1987) ("The FDIC as a corporation is indeed a completely separate entity from the FDIC as receiver of a failed bank for all intents and purposes."). BGF conveniently sidesteps this legal distinction by referring only to FDIC and asserts that this reference is merely mirroring the single entity references in the Court's order awarding attorneys' fees and the final judgment. (Docket No. 158 at n.3.) The Court is not impressed with BGF's attempts to justify its lack of regard for the legal distinction between FDIC-R and FDIC-C in its quest to find a deeper pocket from which to collect its judgment.

First, the case upon which BGF relies in noting that FDIC-C and FDIC-R "remain merely distinct parts of a single entity," *Dalton v. F.D.I.C.*, expressly acknowledges that the **legal obligations** of FDIC-C and FDIC-R are distinct and that their interests in litigation often differ. 987 F.2d 1216, 1222 (5th Cir. 1993) (emphasis added). In its citation to the *Dalton* case, BGF critically omitted the entire statement of the Fifth Circuit in construing the power of the FDIC to remove a case to federal court:

> Even though the two capacities in which the FDIC functions are treated as two distinct legal entities for many purposes, they nonetheless remain merely distinct parts of a single entity, "the Corporation"; and the subject statute affords "the Corporation" but one opportunity to remove the case to federal court.

8

*Id*. This treatment of the FDIC as a single entity for purposes of timing of removal does not change the established law, including in the Fifth Circuit, that FDIC-C has no liability for the obligations of FDIC-R. *F.D.I.C. v. Condit*, 861 F.2d 853 (5th Cir. 1988).

Further, the Court finds no lack of precision in prior orders referring to FDIC. Those references were consistently in the context of describing FDIC as the plaintiff in this case, which plainly describes the capacity of FDIC as receiver for Tennessee Commerce Bank. *See e.g.* Docket No. 132 at 1 ("The FDIC was substituted as the Plaintiff in this matter after it was appointed as receiver for TCB.").[6] Nothing in the record suggests that FDIC-C was ever a named party or otherwise had an interest in this litigation. To the extent that BGF suggests otherwise, it does so boldly in error.

Only after FDIC-R and FDIC-C both moved to quash the writ of execution did BGF relent that the garnishment was intended to reach only the assets held by FDIC-R as receiver for TCB. That concession is, however, too little too late. It defies common sense and logic to believe that BGR was not attempting to garnish assets belonging to FDIC-C by a writ of execution that described the plaintiff and judgment debtor only as "Federal Deposit Insurance Corporation" not as "Federal Deposit Insurance Corporation, as Receiver for Tennessee Commerce Bank" and that sought to garnish quarterly assessments owed to FDIC. Notably, BGF makes no attempt to explain why it believed that Bank of America would be paying quarterly assessments to the TCB receivership estate, that is, to FDIC in its capacity as the TCB receiver. Nor does BGF assert that

---

[6] The language of the final judgment referring to "the plaintiff" and to "FDIC" without any additional designation was drafted and proposed by the parties, including BGF, who presumably were suffering from no confusion that the FDIC was acting in its capacity as a receiver.

9

it is aware of any TCB receivership bank accounts at Bank of America.[7] Instead, BGF maintains that, because Bank of America has not yet answered the writ of garnishment, it is not yet known whether Bank of America has any assets of FDIC-R in its possession. (Docket No. 161 at 2-3.) Had BGF attempted to garnish a bank account in the name of the receivership estate or any other assets held by FDIC-R for which Bank of America is the depository institution rather than specifically described "quarterly assessments owed to the FDIC," BGF's argument might be more plausible. As it is, BGF's contention of its good faith rings hollow. To the extent that BGF seeks to attach or otherwise execute upon assets of FDIC-C, including any insurance deposits owed to FDIC-C by Bank of America, the attachment/execution is improper.

> **2. BGF's judgment was satisfied by the FDIC-R's issuance of a NAC allowing BGF's claim as general unsecured.**

There is no dispute that, on February 21, 2018, FDIC-R issued a notice of claim to BGF allowing its claim as general unsecured. Courts have consistently held that the FDIC, acting in its capacity as a receiver, may pay creditors with receiver's certificates, which are now known as notices of claim, instead of with cash. *Meritage Homes of Nevada, Inc. v. F.D.I.C.*, 753 F.3d 819, 823-24 (9th Cir. 2014) (internal citations omitted); *Midlantic National Bank/North v. Fed. Res. Bank of New York*, 814 F.Supp. 1195, 1196 (S.D. N.Y. 1993); *Franklin Bank v. F.D.I.C.*, 850

---

[7] Had FDIC-R properly complied with Rule 11(c)(2), the Court would be inclined to recommend the imposition of sanctions, including attorneys' fees, particularly given that FDIC attorneys notified BGF's counsel of the legal distinction between FDIC-C and FDIC-R before BGF filed its application for writ of execution. (Docket No. 146-5.) FDIC-R contends that BGF's counsel was also informed that "no legal basis exists to garnish the deposit insurance assessments." (Docket No. 168 at 5.) However, the referenced exhibits (Docket Nos. 146-4 and 146-5) – which are admittedly redacted – do not specifically reference the insurance assessments. The Court is unable to discern whether the insurance assessments were specifically addressed in communications with BGF's counsel or FDIC-R is simply relying on the general statements by its attorneys to BGF's counsel that any efforts to collect the final receivership judgment from FDIC-C would be frivolous. Regardless, FDIC-R did not comply with Rule 11(c)(2) by filing a separate motion.

10

Supp. 845, 847 (N.D. Cal. 1994); *Condus v. Howard Sav. Bank*, 999 F.Supp. 594, 598 (D. N.J. 1998); *Goldstein v. F.D.I.C.*, Civil Action No. ELH-11-1604, 2014 WL 69882, at * 8 n.9 (D. Md. Jan. 8, 2014); *Norwood v. F.D.I.C.*, CV 210-162, 2012 WL 13005303, at *5 (S.D. Ga. Nov. 28, 2012) (collection of cases). The Court concurs with this outcome and concludes that FDIC-R's issuance of a NAC to BGF constituted a full satisfaction of BGF's general unsecured claim under FIRREA.

    **(a)**     **No other remedies are available to BGF under FIRREA because of its failure to timely seek review of allowance of its claim as general unsecured.**

Under FIRREA, if BGF asserted that its claim was entitled to administrative priority – as BGF now does – it was required to contest FDIC-R's allowance of the claim as general unsecured by seeking judicial review in this case within 60 days from the issuance of the NAC. 12 U.S.C. § 1821(d)(6)(A).[8] FIRREA further provides that

---

[8] That section provides as follows:

(6) Provision for agency review or judicial determination of claims
    (A) In general
    Before the end of the 60-day period beginning on the earlier of--
        (i) the end of the period described in paragraph (5)(A)(i) with respect
        to any claim against a depository institution for which the
        Corporation is receiver; or
        (ii) the date of any notice of disallowance of such claim pursuant to
        paragraph (5)(A)(i),

> the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A). Paragraph 5(A), including subpart (i), establishes procedures for the receiver's determination of allowance and disallowance of claims.

> if a claimant fails to … file suit on such claim (or continue an action commenced before the appointment of the receiver) before the end of the 60-day period … the claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

12 U.S.C. § 1821(d)(6)(B); *see also Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 19 n.8 (once the 60-day period expires, "such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim") (citing 12 U.S.C. § 1821(d)(6)(B)) and *Miller v. F.D.I.C.*, 738 F.3d 836, 845 (7th Cir. 2013) ("Both the language and structure of the statutory text clearly indicate that the 60-day limitations period is a jurisdictional prerequisite.") Because BGF did not timely seek review of allowance of its claim as general unsecured after issuance of the NAC, BGF is precluded from now doing so by the plain language of FIRREA. *MPR v. Glob., Inc. v. F.D.I.C.*, 299 Fed. App'x 620, 621-22 (9th Cir. 2008) (failure of plaintiff's predecessors to timely seek review of FDIC's payment of claim with a receiver's certificate triggered statute of limitation under § 1821(d)(6)(B) that barred claim).[9] Under the express language of FIRREA, BGF holds only the general unsecured claim allowed by the NAC and has no further rights or remedies with respect to the claim, including specifically

---

[9] FDIC-R also contends that § 1821(d)(13)(D) deprives the Court of jurisdiction over the claim process. (Docket No. 146 at 4-5.) BGF disagrees and argues that the Court already decided twice that it has jurisdiction over BGF's claim for attorneys' fees, notwithstanding this provision of FIRREA. (Docket No. 158 at 10-11.) Because the Court finds that BGF failed to timely contest FDIC-R's allowance of its claim as general unsecured, and therefore has no other available remedies, it is unnecessary to reach the issue of whether § 1821(d)(13)(D) further limits judicial review. However, the Court does note that the instant relief requested by BGF, namely allowance of its claim as an administrative priority, is substantively different than the earlier dispute between the parties over the allowance of BGF's attorneys' fees. For that reason, further judicial review may well be limited by § 1821(d)(13)(D).

recharacterization of the agreed judgment as a priority administrative claim, because that relief is expressly time-barred.

### (b) BGF has not demonstrated a basis for relief under Rule 60(b)(6).

Under Rule 60(b)(6), which is the only arguable Rule 60(b) basis for BGF's relief as the other reasons articulated in Rule 60(b) do not apply, the Court may provide relief to BGF for "any … reason that justifies relief." Rule 60(b)(6) is "a 'catch-all provision' providing relief from a final judgment for any reason not otherwise captured in Rule 60(b)." *Miller v. Mays*, 879 F.3d 691, 698 (6th Cir. 2018) (citation omitted). "[T]he party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008). Courts must apply subsection (b)(6) only "as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (citations omitted). The something more **"must include unusual and extreme situations where principles of equity *mandate* relief."** *Id.* (emphasis in original); *see also West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015) ("exceptional or extraordinary circumstances" required). To satisfy the principles of equity factor, the Sixth Circuit has required the moving party to demonstrate: (1) lack of prejudice to the non-moving party; (2) a meritorious defense; and (3) lack of culpability for the adverse judgment. *Travelers Cas. & Sur. Co. of Am. v. J.O.A. Const. Co., Inc.*, 479 Fed. App'x. 684, 693 (6th Cir. 2012) (citation omitted).

Further, a Rule 60(b)(6) motion must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). What constitutes a reasonable time is a fact-specific determination and the moving party must articulate a reasonable basis for delay. *Tyler v. Anderson*, 749 F.3d 499, 510 (6th Cir. 2014) (citations omitted). The fact-specific determination "ordinarily depends on the facts of a given case

13

including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief." *Olle*, 910 F.2d at 365. The Sixth Circuit evaluates reasonableness, in part, by considering a petitioner's diligence in seeking relief. *See Miller*, 879 F.3d at 699.

The grant of relief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation. *Tyler*, 749 F.3d at 509 (citation omitted). In keeping with this restriction, "a party may not use a Rule 60(b) motion as 'a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof.'" *United States v. Rohner*, 634 Fed. App'x 495, 506 (6th Cir. 2015) (citation omitted).

The Sixth Circuit has found that the district court's discretion in deciding a Rule 60(b)(6) motion is "especially broad due to the underlying equitable principles involved." *Tyler*, 749 F.3d at 509 (citation omitted). "Rule 60(b)(6) motions necessitate 'a case-by-case inquiry' in which the district court 'intensively balance[s] numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts.'" *Miller*, 879 F.3d at 698 (citation omitted). "These factors can include 'the risk of injustice to the parties' as well as 'the risk of undermining the public's confidence in the judicial process.'" *Id.*

Here, FDIC-R issued the notice of allowance of BGF's claim as general unsecured on February 21, 2018. (Docket No. 146-1.)[10] BGF has not articulated any reason for its failure to seek review of FDIC-R's allowance of BGF's claim as general unsecured within the time allowed by the FIRREA or any other time in the three years since. Nor, for the reasons discussed herein,

---

[10] Even prior to that date, BGF's counsel contested that a NAC was the proper remedy. *See* December 12, 2017 email exchange at Docket No. 159-1.

14

has BGF demonstrated that it has a meritorious defense to treatment of its claim as general unsecured, which goes to the second equity factor. As to the first factor, the Court finds that granting the requested relief to BGF at this juncture would be highly prejudicial to FDIC-R, which settled with BGF and issued a NAC in compliance with the ordinary procedures for administration of the receivership estate. Regarding the third factor, BGF agreed to the judgment. If there was any question about the priority of BGF's claim, it should have been raised in connection with the agreed judgment or within the time allowed by the express provisions of FIRREA. There is no basis to now allow BGF to upset those procedures more than three years later.

BGF has offered no evidence, much less clear and convincing evidence, that this is an unusual and extreme situation for which equity demands relief. In fact, BGF has offered little in way of explanation for why it did not address the priority of its claim when litigating or settling the attorneys' fees dispute. Nor has BGF offered any explanation for its failure to seek judicial review of the claim priority issue within the time allowed by FIRREA.[11]

Based on the entirety of the circumstances – including especially that the judgment was agreed to by BGF without any designation of BGF's claim as priority, that BGF (through its counsel) has known of FDIC-R's intention to satisfy BGF's claim by issuance of a NAC since before the NAC was issued, and that the NAC allowing BGF's claim as general unsecured was issued more than three years ago without any timely contest by BGF under FIRREA – the Court finds the equities in this case overwhelmingly compel denial of BGF's motion for relief. Justice

---

[11] The Court finds particularly compelling the proximity of the December 12, 2017 email exchange to FDIC-R's issuance of the notice of claim on February 21, 2018. In the December 2017 email exchange, BGF's counsel contested issuance of a receiver's certificate as the proper remedy for payment of the agreed judgment for attorneys' fees. (Docket No. 159-1 at 1.) Despite being on notice of FDIC-R's intention to satisfy the agreed judgment by issuance of a receiver's certificate, BGF still took no action to timely seek judicial review once the notice of allowance of claim (which replaced receiver's certificates) was issued roughly two months later.

15

does not demand any other outcome, as this is a situation of BGF's own making. BGF had ample opportunity to request administrative priority treatment of its attorneys' fee claim, as memorialized in the agreed judgment, and it failed to do so. Public policy – consistent with the statutory policy of finality contemplated in FIRREA – strongly favors not upsetting the allowance of BGF's claim as general unsecured.

### 3. The final judgment does not constitute an administrative expense under FIRREA.

As a last-ditch effort to receive a greater distribution or dividend on its claim, BGF now seeks allowance and payment of the agreed judgment as an administrative receivership expense, relying on Tenn. Code Ann. § 26-4-102. (Docket No. 158.) For all the reasons articulated above, BGF's request for payment must be denied because it is both preempted and untimely. Even aside from these fatal defects, BGF's request also fails on the merits.

BGF relies on the analysis in *RTC v. Heinhold Commodities, Inc.*, 803 F.Supp. 1342, 1349 (N.D. Ill. 1992), which looked to cases applying 11 U.S.C. § 503 for allowance of administrative expenses under the Bankruptcy Code to determine allowance of administrative expenses "against a federal bank receiver." (Docket No. 158 at 7.)[12] However, that case does not dictate the result

---

[12] BGF also relies on two bankruptcy cases as ordering a bankruptcy trustee to pay attorney's fees in failed litigation. *Brandt v. Lazard Freers & Co. (In re Healthco Int'l, Inc.)*, 310 F.3d 9, 12-13 (1st Cir. 2002) and *In re GIC Gov't Secs. Inc.*, 121 B.R. 647, 648-49 (M.D. Fla. 1990). Those cases do not, however, support the proposition that BGF asserts. In the *Healthco* case the successful defendants in the trustee's fraudulent conveyance action did not seek allowance of their attorneys' fees as an administrative priority, only the costs and expenses awarded under 28 U.S.C. § 1920, which are treated as an administrative expense under the express language of § 507 of the Bankruptcy Code. *Healthco*, 310 F.3d at 12 (also holding that fees arising under a pre-petition contract are not administrative expenses); *see also* U.S.C. § 507(a)(2) (affording administrative priority status to "any fees and charges assessed against the estate under chapter 123 of title 28"). Similarly, although BGF attempts to shore up its arguments by arguing that FDIC-R controlled the litigation, there can be no dispute that the lawsuit was pending at the time of FDIC-R's appointment as a receiver, which distinguishes this case from the *GIC Gov't Securities* case, in which the bankruptcy court awarded costs – again, not attorneys' fees – to the

16

that BGF seeks here. Most fundamentally, *Heinhold Commodities* is not binding precedent. Nor does the Court find *Heinhold Commodities* helpful or persuasive because it contradicts established Sixth Circuit law.

It is well settled in the Sixth Circuit that claims, including attorney fees, arising out of a prepetition agreement cannot be treated as administrative expenses under the Bankruptcy Code. *See e.g. In re Eco. Lodging Sy., Inc.*, 234 B.R. 691, 697 (B.A.P. 6th Cir. 1999) (affirming bankruptcy court's determination that a claim arising out of a prepetition agreement do not satisfy the test for an administrative expense citing *PBGC v. Sunerhauserman, Inc. (In re Sunerhauserman, Inc.)*, 126 F.3d 811, 816-17 (6th Cir. 1997)); *In re HNRC Dissolution Co.*, 396 B.R. 461, 484 n. 18 (B.A.P. 6th Cir. 2008) (collection of cases following *Sunerhauserman* in declining to afford administrative priority status to claims arising out of prepetition contracts). Other circuits have expressly applied this rule to deny administrative priority for post-petition attorney's fees arising out of a prepetition agreement, including when the fees were incurred in litigation with the bankruptcy trustee. *Ogle v. Fid. & Deposit Co. of Maryland*, 586 F.3d 143, 147 (2nd Cir. 2009) ("an unsecured claim for post-petition fees, authorized by a valid pre-petition contract … is deemed to have arisen pre-petition"); *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.),* 258 F.3d 385 (5th Cir.2001) (declining to allow administrative priority to non-debtor litigant's claim for attorney fees, costs and expenses awarded to it as prevailing party in chapter 7 trustee's post-petition suit for breach of prepetition contract); *In re Abercrombie*, 139 F.3d 755, 759 (9th Cir. 1998) (claim for post-petition attorney's fees denied administrative priority because the "source of the estate's obligation remains the prepetition

---

defendant in a post-petition lawsuit brought by the bankruptcy trustee. *GIC Gov't Secs. Inc.*, 121 B.R. at 649.

fee provision"); *In re Hemingway Transport, Inc.*, 954 F.2d 1, 7 (1st Cir. 1992) (disallowed creditor's administrative priority claim for attorney's fees arising out of indemnification clause in prepetition lease, noting that "[a] chapter 7 trustee's lawsuit may indeed impose burdensome litigation expense upon successful and unsuccessful defendants alike").

Here, the specific basis for BGF's claimed entitlement to – and ultimate award of – attorneys' fees was the Forbearance Agreement, which was entered into by BGF and TCB prior to appointment of FDIC-R as receiver. *See* September 21, 2016 Order, Docket No. 132 at 9-13. The Court finds that the guidance afforded by the administrative priority scheme of the Bankruptcy Code compels denial of BGF's request for allowance and payment of its attorneys' fee award as an administrative receivership claim because the contractual authorization for those fees was the pre-receivership Forbearance Agreement.

For all these reasons, BGF has failed to provide any legally sound basis upon which to grant the relief requested in its motion to subject (Docket No. 157), namely to allow its attorneys' fee award, as reflected in the agreed judgment, as an administrative expense of the receivership estate and to order payment of the amount of the agreed judgment from the receivership estate as an administrative priority.

### III. Recommendation

Based on the foregoing, it is respectfully RECOMMENDED that:

1. FDIC-R's motion to quash (Docket No.146) be granted, except as to FDIC-R's request for attorneys' fees as sanctions under Rule 11, which it is recommended be denied without prejudice;

18

2. FDIC-C's motion to quash (Docket No. 155) be granted;

2. BGF's motion to subject (Docket No. 157) be denied.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

          Respectfully submitted,

          _____
          BARBARA D. HOLMES
          United States Magistrate Judge